UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

AMY COOK,

       Plaintiff,

  v.

HOSPICE CARE OF SOUTHWEST
MICHIGAN INC.,

       Defendant.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
251 North Rose Street
Suite 200, PMB № 288
Kalamazoo, MI 49007-3860
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

# COMPLAINT

Plaintiff Amy Cook alleges the following for her complaint against Defendant Hospice Care of Southwest Michigan Inc.

## NATURE OF THE CASE

1. This is an employment case about retaliation. Plaintiff Amy Cook worked for Defendant Hospice Care of Southwest Michigan Inc. where she uncovered Medicare fraud. Cook requested that Defendant end its unlawful and fraudulent practices, but Defendant refused to do so.

2. Cook also encountered harassment, intimidation, and discrimination at work because of her status as a female in the workplace and a caregiver to her six children. She

complained to Defendant about the discriminatory treatment she received.

3. About a week after her complaints about the discrimination—and also just about a week after she requested that Defendant end its Medicare fraud—Defendant promptly fired Cook in violation of the anti-retaliation provisions of the False Claims Act and Michigan's Elliot-Larsen Civil Rights Act.

4. In addition, Defendant misclassified Cook as exempt from overtime compensation and failed to properly pay her overtime compensation in violation of the Fair Labor Standards Act. Cook worked 10 to 20 hours (or more) of overtime each workweek for Defendant.

5. Due to Defendant's retaliation and statutory violations, Cook has suffered damages that include, but are not limited to, lost wages and benefits, liquidated damages, emotional distress, attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Amy Cook is an individual person who resides in Kalamazoo County, Michigan.

7. Defendant Hospice Care of Southwest Michigan is a nonprofit corporation organized under the laws of the State of Michigan. The corporation maintains its principal place of business in Kalamazoo County, Michigan.

8. The Court has personal jurisdiction over Defendant under Michigan Compiled Laws Sections 600.711 and 600.715. FED. R. CIV. P. 4(k)(1)(A).

9. The Court has original subject matter jurisdiction over the claims asserted in the complaint under the False Claims Act and the Fair Labor Standards Act in accordance with Title 28 of the United States Code, Section 1331, because those claims arise under federal law. The False Claims Act and Fair Labor Standards Act also independently provide for subject matter jurisdiction in the United States Courts. 31 U.S.C. § 3730(h)(2); 29 U.S.C. § 216(b).

10. The Court has supplemental jurisdiction over the state law claims asserted in the complaint under Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

11. Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

## GENERAL ALLEGATIONS

12. Plaintiff Amy Cook worked for Defendant Hospice Care of Southwest Michigan as an informatics specialist from May 2020 until February 18, 2021.

### *Defendant Misclassifies Cook As Overtime Exempt*

13. When Defendant first employed Cook, Defendant classified Cook as non-exempt from overtime pay under the Fair Labor Standards Act (FLSA), but it did not allow her to work more than 40 hours in a particular workweek.

14. About a month later, though, Defendant changed Cook's FLSA classification status from non-exempt to exempt from overtime pay. After the classification change, Cook worked at least 50 to 60 hours each workweek (or more).

15. Cook's job duties before and after the FLSA classification change were exactly the same, and nothing about her job or the work she performed changed.

16. Cook's job duties as an informatics specialist for Defendant were akin to an information technology help desk employee. Cook would receive calls from Defendant's employees about medical records issues (coding, billing, *etc.*) that she needed to resolve for them.

17. Cook did not perform any work to build, design, or upgrade any of Defendant's information technology systems.

18. Defendant misclassified Cook as exempt from overtime compensation when it changed her FLSA classification status to overtime exempt.

19. Defendant failed to provide Cook overtime compensation for the hours over 40 that she worked each workweek.

### *Cook Tries to Stop Defendant's Medicare Fraud*

20. Defendant operates hospice facilities throughout Southwest Michigan where it provides medical care to patients and also other end-of-life care services.

21. Defendant employs physicians, registered nurses, and other medical care and service providers.

22. Defendant bills both the Medicare and Medicaid programs for its services, and Defendant receives compensation from Medicare and Medicaid for its services.

23. Cook informed Defendant that it was engaging in Medicare fraud.

24. Cook explained to Defendant on several occasions that its practice of having registered nurses "relate" or "unrelate" medical diagnoses to patients' terminal diagnoses was unlawful, and that only a medical doctor may "relate" or "unrelate" medical diagnoses to patients' terminal diagnoses.

25. Cook also informed Defendant that its practice of automatically selecting one of Defendant's employees to serve as a patient's attending physician if the patient's chosen attending physician was unavailable was unlawful as the patient may choose a different attending physician or may choose no attending physician at all. The patient has the right to choose under the Medicare program and Defendant's practice of automatically selecting its employees as the attending physician in certain instances eliminated the patient's ability to choose.

26. Cook requested that Defendant end both unlawful practices immediately. Defendant refused to do so.

*Cook Complains About Discrimination*

27. Cook and her husband have six children. Cook's children range in age from five years old to 17 years old.

28. One of Cook's coworkers regularly berated, bullied, intimidated, harassed, and otherwise discriminated against Cook because of Cook's child caregiver status and her need to provide care to her children, and because of her gender. This particular employee felt that Cook should not work and should be at home with her children as a female and a mother.

29. Cook repeatedly raised complaints about the discrimination she encountered to her supervisor and to Defendant's human resource representatives. Cook lodged these complaints every other week or so for several months.

30. Little to nothing was done about Cook's complaints or to end the discrimination she encountered.

*Defendant Fires Cook*

31. Approximately one week after Cook's request to Defendant that it end its illegal Medicare practices—and also roughly one week after one of Cook's complaints about the discrimination she encountered—Defendant summarily fired Cook.

32. Defendant informed Cook of the termination of her employment on February 18, 2021.

## COUNT 1
### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

33. Cook repeats and incorporates all the previous allegations in her complaint.

34. The FLSA requires covered employers to pay non-exempt employees like Cook no less than 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207.

35. Cook worked more than 40 hours per week for Defendant during certain workweeks, but Defendant did not properly compensate her for all of the overtime hours that she worked as required by the FLSA.

36. Cook did not qualify for an exemption from the FLSA's requirement that she receive overtime compensation when she worked for Defendant.

37. Defendant has not made a good-faith effort to comply with the FLSA as it relates to the compensation of Cook.

38. Defendant knew that Cook worked overtime without proper compensation, and it willfully failed and refused to pay Cook wages at the required overtime rates. 29 U.S.C. § 255.

39. Defendant's willful failure and refusal to pay Cook overtime wages for the overtime hours that she worked violates the FLSA. 29 U.S.C. § 207.

40. Cook suffered damages as a result of Defendant's violations of the FLSA, that include, but are not limited to, back wages, liquidated damages, attorney's fees, and litigation costs.

## COUNT 2
### RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

41. Cook repeats and incorporates all the previous allegations in her complaint.

42. The anti-retaliation provisions of the False Claims Act provide that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

43. A claim for retaliation under the False Claims Act does not have be filed under

seal. *See*, *e.g.*, *Tibor v. Mich. Orthopaedic Inst.*, 72 F. Supp. 3d 750, 757 (E.D. Mich. 2014) (holding that "by its terms, the [False Claims Act] does not require an individual pursuing a retaliation claim under § 3730(h) to sue in the name of the government, file the complaint under seal, or follow any of the other procedures that apply to a person bringing suit under § 3729"); *see also Verble v. Morgan Stanley Smith Barney LLC*, 148 F. Supp. 3d 644, 658 (E.D. Tenn. 2015) (holding the same).

44. Cook engaged in protected activities under the False Claims Act when she informed Defendant about its unlawful Medicare practices and tried to get Defendant to stop those practices.

45. Defendant knew about Cook's protected activities under the False Claims Act.

46. Defendant terminated Cook's employment because of her protected activities under the False Claims Act.

47. Cook suffered damages because of Defendant's retaliation that include, but are not limited to, lost wages and benefits, liquidated damages, attorney's fees, and litigation costs.

## COUNT 3
### RETALIATION IN VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT

48. Cook repeats and incorporates all the previous allegations in her complaint.

49. Section 202(1) of Michigan's Elliott-Larsen Civil Rights Act provides, in part, that:

> (1) An employer shall not do any of the following:
>
> > (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … sex ….
> >
> > (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the

> employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of … sex ….
>
> \* \* \*
>
> (d) Treat an individual affected by … childbirth … differently for any employment-related purpose from another individual who is not so affected but similar in ability or inability to work ….

MICH. COMP. LAWS 37.2202(1).

50. Cook engaged in activity protected by Michigan's Elliott-Larsen Civil Rights Act when she, among other things, opposed the repeated harassment, discrimination, and violations of the Act that she endured in relation to her status as a female in the workplace with childcare obligations.

51. Defendant knew about Cook's opposition and protected activities.

52. Defendant treated Cook differently in connection with the terms and conditions of her employment and it ended her employment.

53. There was a causal connection between Cook's protected activities and the adverse employment actions Defendant took against her.

54. Cook suffered damages as a result of Defendant's violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## JURY DEMAND

55. Cook demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

## RELIEF REQUESTED

56. Plaintiff Amy Cook requests that the Court enter a judgment in her favor and against Defendant in an amount that will fully and fairly compensate her for all of her damages, losses, expenses, back wages, emotional distress, attorney's fees, litigation costs, and interest.

- 9 -

57. Cook also requests that the court grant her any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

AMY COOK

Dated: May 5, 2021　　　　　　　　　　　By:  /s/ Mark S. Wilkinson

    Mark S. Wilkinson (P68765)
    *Attorney for Plaintiff*
    PALADIN EMPLOYMENT LAW PLLC
    251 North Rose Street
    Suite 200, PMB № 288
    Kalamazoo, MI 49007-3860
    (tel.) 269.978.2474
    mark@paladinemploymentlaw.com